## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| AALIYAH LIPSEY,<br><br>*Plaintiff*,<br><br>v.<br><br>R&D MEDICAL SOLUTIONS, PLLC d/b/a<br>OCCMED EXPRESS,<br><br>*Defendant*. | **Case No.**  6:24-cv-434<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Aaliyah Lipsey, through her attorneys, Eisenberg & Baum, LLP, states her Complaint against R&D Medical Solutions, PLLC d/b/a OccMed Express ("R&D" or "OccMed"):

### INTRODUCTION

1.      As memorialized in a video recording, Ms. Lipsey was denied entry to OccMed for a physical examination because of the mere presence of her service dog. Put another way, Ms. Lipsey was discriminated against solely because of her disabilities.

2.      Ms. Lipsey is an individual with a disability, and her service dog, Timothy, is a multipurpose medical and psychiatric service animal, performing tasks such as alerting Ms. Lipsey to high blood pressure and interrupting oncoming panic attacks, disassociation, and mood swings associated with her post-traumatic stress disorder ("PTSD").

3.      The Rehabilitation Act protects individuals with disabilities like Ms. Lipsey and forbids exclusion "from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).

4.      As with the Rehabilitation Act, "discrimination prohibited by [state law] includes a refusal to allow a person with a disability to use or be admitted to any public facility," which

1

includes OccMed. *See* Tex. Hum. Res. Code § 121.003(d)(2)–(3).

5.      OccMed's discrimination against Ms. Lipsey caused her to suffer anger, humiliation, frustration, and mental anguish and deprived her of opportunities otherwise afforded to individuals without disabilities. Indeed, civil-rights violations are inherently distressing because they inflict a profound personal humiliation and reinvoke a history of exclusion.

6.      Ms. Lipsey brings this action seeking nominal and compensatory damages and attorney's fees and costs to redress OccMed's unlawful discrimination against her on the basis of her disabilities in violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and the Texas Human Resources Code ("THRC").

## PARTIES

7.      Plaintiff Aaliyah Lipsey is a resident of McGregor, Texas, who has disabilities within the meaning of state and federal civil rights laws. Her PTSD diagnosis, among other psychiatric disabilities, substantially limits Ms. Lipsey's day-to-day functions and her ability to care for herself. Her service dog, Timothy, helps her perform tasks to ameliorate her disabilities.

8.      Timothy is a multipurpose medical and psychiatric service animal, performing tasks such as alerting Ms. Lipsey to high blood pressure and interrupting oncoming panic attacks, disassociation, and mood swings associated with her PTSD.

9.      Defendant R&D Medical Solutions PLLC is a corporation organized under the laws of Texas. Its mailing address and registered agent for service are c/o Roy Allen Franklin, 325 Brookwood Drive, Woodway, TX 76712.

10.     Defendant R&D Medical Solutions PLLC is a business entity existing under the laws of the State of Texas.

11.     Upon information and belief, R&D was and still is the owner of the premises known

as OccMed Express, which is located at 701 W Loop 340 Suite A, Waco, TX, 76712.

12.     Upon information and belief, R&D operated, managed and/or maintained, supervised and/or controlled the premises known OccMed Express, located at 701 W Loop 340 Suite A, Waco, TX, 76712.

13.     Upon information and belief, R&D failed to operate, manage, maintain, supervise and/or control the premises known as OccMed Express, which is located at 701 W Loop 340 Suite A, Waco, TX, 76712, in a safe condition.

14.     Upon information and belief, R&D operates, manages, maintains, supervises and/or controls a place of public accommodation or public facility.

15.     Defendant is a recipient of federal financial assistance.

16.     R&D receives federal financial assistance because it receives reimbursements of Medicare and/or Medicaid.[1]

17.     The federal government has substantially performed its obligations under this contractual arrangement with Defendant and/or was willing and able to perform any remaining obligations.

18.     The Rehabilitation Act requires recipients of federal funds to provide equal access and non-discriminatory treatment to individuals with disabilities. Defendant's refusal to allow Ms. Lipsey to enter its location with her service dog directly violates Defendant's obligations.

19.     The Rehabilitation Act provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

---

[1] Centers for Medicare & Medicaid Services, https://data.cms.gov/tools/medicare-revalidation-list/provider/O20231107000878?size=10&offset=0&orgName=R%26d%20Medical%20Solutions%20Pllc&state=TX (last accessed Aug. 23, 2024).

Federal financial assistance." 29 U.S.C. § 794.

20.     Under the Rehabilitation Act, federal regulations define discriminatory actions to include "[a]fford[ing] a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 45 C.F.R. § 84.4(b)(1)(ii). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

21.     Defendant discriminated against Ms. Lipsey solely based on her disability by denying her meaningful access to the services, programs, and benefits Defendant offers to other individuals, such as the opportunity to undergo a physical examination and be gainfully employed.

22.     Defendant discriminated against Ms. Lipsey solely based on her disability by refusing to provide necessary auxiliary aids and services to ensure full inclusion in violation of Section 504 of the Rehabilitation Act.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction for the federal-law claim pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction for the state-law claim pursuant to 28 U.S.C. § 1367 because that claim is substantially related to the federal-law claim.

24.     Venue is proper in this District under 28 U.S.C. § 1391(b) because, among other things, Defendant resides in this District and the acts and omissions giving rise to this Complaint occurred in this District.

## CONDITION PRECEDENT FOR TEXAS HUMAN RESOURCES CODE CLAIM

25.     Pursuant to Tex. Hum. Res. Code § 121.0041(c), a claimant must give written notice of its claims to a defendant "[n]ot later than the 60th day before the date an action to which this section applies is filed."

26.     Out of an abundance of caution, on May 1, 2024, Plaintiff provided notice by letter to Defendant, which included Plaintiff's name, a description of each alleged violation in reasonable detail, and the date, place, and manner in which Plaintiff discovered each alleged violation.

27.     Defendant responded, but Plaintiff's past harm is not curable within the meaning of Tex. Hum. Res. Code § 121.0041(e).

28.     As such, Plaintiff has timely complied with any possible requirements of Tex. Hum. Res. Code § 121.0041(c), *et seq.*, if it were a prerequisite to commencing this suit for violations of the THRC.

## STATEMENT OF FACTS

29.     On April 23, 2024, Ms. Lipsey and her service dog, Timothy, arrived at OccMed seeking a physical examination.

30.     Ms. Lipsey's prospective employer, Waco Transit Authority, required a pre-employment physical examination and screening.

31.     An OccMed employee immediately denied Ms. Lipsey entry because of her service dog.

32.     OccMed's employee stated that Ms. Lipsey must show documentation of her animal's registration.

33.     Although Ms. Lipsey correctly explained that registration papers are not required, the employee insisted.

34.     OccMed's employee justified this request by stating that she herself has two service animals, both of whom were "registered." Therefore, OccMed's employee insisted that Ms. Lipsey's service animal also needed to be "registered."

35.    OccMed's employee then accused Ms. Lipsey's service animal of being an emotional support animal rather than a trained service animal.

36.    Once again, Ms. Lipsey calmly explained that requiring documentation of a service dog's registration violates federal law.

37.    OccMed's employee ignored Ms. Lipsey, talking over her and asking her to leave.

38.    Ms. Lipsey left OccMed and then returned after starting a video recording.

39.    OccMed's employee states that she shredded Ms. Lipsey's paperwork and called the police.

40.    After Ms. Lipsey requests to speak with the owner again, this exchange followed:

> **LIPSEY:** Can I ask why my service animal is not allowed in here?
>
> **OWNER:** For the same reason I said earlier: because there are other patients here who could very well be sensitive, allergic.

41.    However, "[a]llergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals." U.S. Department of Justice, *ADA Requirements: Service Animals*, https://www.ada.gov/resources/service-animals-2010-requirements/. Ms. Lipsey informed OccMed's owner about applicable law and regulations.

42.    At any rate, the owner's position was unequivocal: "As far as like having an animal in here, regardless of it's a service animal or not a service animal, I don't allow animals in this building."

43.    Ms. Lipsey then reminded OccMed's owner that this assertion was against the law, but the owner ignored Ms. Lipsey's statements once again, stating that she already "knows what the law says."

44.    Still trying to assert her civil rights, Ms. Lipsey reminded OccMed's owner that service animals cannot be denied public access, unlike emotional support animals.

45.     Again, OccMed's owner denied Ms. Lipsey's factual explanations of the law, responding instead that "that is not true. In a healthcare facility, I can look out for other people. I'm not going to debate this with you. I own this place and you can't have your dog in here."

46.     Ms. Lipsey tried to explain to the owner that OccMed is a place of public accommodation but was quickly interrupted by her.

47.     The owner angrily told Ms. Lipsey that OccMed is "[n]ot a public place. Not a public place," and that since she owns the building, she can call the Waco Police Department ("Waco PD") to remove Ms. Lipsey from the premises.

48.     OccMed's owner then ends the conversation by saying "we're done"—three times—and then threatening Ms. Lipsey: "Leave the property or I'm gonna call Waco PD."

49.     Ms. Lipsey stated she had already called Waco PD and exited the property.

50.     Ultimately, Ms. Lipsey was denied access to and the ability to benefit from OccMed's public services simply because she tried to enter with her service dog Timothy.

51.     For the duration of this interaction, Timothy waited calmly by Ms. Lipsey's side. He did not demonstrate any disruptive behavior and was under Ms. Lipsey's control.

52.     OccMed's owner based her rationale on allergies, and so any other rationale would be demonstrably false based on the recording.

53.     All in all, Waco Transit would ultimately decide whether Ms. Lipsey is qualified for the position with the assistance of her service dog. For example, even if Ms. Lipsey has episodes of fainting or passing out that require the use of her service dog, the Department of Transportation does not categorically exclude someone who faints.[2]

---

[2] Fed. Motor Carrier Safety Admin., Medical Examiner Handbook at 31, https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/mission/advisory-committees/mrb/83401/fmcsamedicalexaminerhandbook_0.pdf    ("Note    whether    the    driver

54.     In fact, OccMed has since invited Ms. Lipsey to return to OccMed with her dog at an agreed, pre-arranged time for completion of her physical examination.

55.     Defendant intentionally discriminated against Ms. Lipsey and acted with deliberate indifference to her civil rights. Upon information and belief, Defendant knew of its obligations under state and federal antidiscrimination laws to develop policies to promote compliance with these statutes.

56.     Defendant's discrimination against Ms. Lipsey not only caused emotional distress but violated her civil rights. Defendant deprived her of the full and equal enjoyment of its benefits and services.

57.     Defendant knew its actions and inactions created an unreasonable risk of causing Ms. Lipsey greater levels of emotional distress than a person without a disability would be expected to experience.

58.     Defendant intentionally and deliberately discriminated against Ms. Lipsey by treating her differently than other individuals without disabilities.

59.     In failing to provide such equal treatment and failing to make reasonable accommodations despite notice, Defendant intentionally discriminated against Ms. Lipsey and acted with deliberate indifference to her federally protected rights.

60.     Ms. Lipsey seeks any and all remedies available under contract law, including expectation-interest damages. Ms. Lipsey lost out on opportunities, such as a job with Waco Transit that paid better than the job she ultimately accepted, and suffered related damages.

61.     Based on Ms. Lipsey's experience, it is evident that Defendant has failed to

---

checked 'Yes' due to fainting or dizziness. Ask about episode characteristics, including frequency, factors leading to and surrounding an episode, and any associated neurologic symptoms (e.g., headache, nausea, loss of consciousness, paresthesia)."

implement proper policies, procedures, trainings, and practices respecting the civil rights and communication needs of individuals with disabilities that require the use and help of a service animal.

## CAUSES OF ACTION

### COUNT I: Violations of Section 504 of the Rehabilitation Act

62.     Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

63.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

64.     At all times relevant to this action, Ms. Lipsey has had substantial limitations to major life activities. For example, her PTSD diagnosis, among other psychiatric disabilities, substantially limits Ms. Lipsey's day-to-day functions and her ability to care for herself. Thus, she has been an individual with a disability within the meaning of the Rehabilitation Act. 29 U.S.C. § 705(9); 42 U.S.C. § 12102(2). Her service dog, Timothy, is a multipurpose medical and psychiatric service animal, performing tasks such as alerting Ms. Lipsey to high blood pressure and interrupting oncoming panic attacks, disassociation, and mood swings associated with her PTSD.

65.     At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance under 29 U.S.C. § 794(b).

66.     Section 504 of the Rehabilitation Act provides that no "otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

67.     Under the Rehabilitation Act, federal regulations define discriminatory actions to include "[a]fford[ing] a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 45 C.F.R. § 84.4(b)(1)(ii). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

68.     Under the Rehabilitation Act, federal regulations prohibit recipients of federal funds from "otherwise limiting a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 45 C.F.R. § 84.4 (b)(1)(vii). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

69.     Under the Rehabilitation Act, federal regulations prohibit recipients of federal funds from "[a]fford[ing] a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons." 45 C.F.R. § 84.52(a)(2). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

70.     Under the Rehabilitation Act, federal regulations prohibit recipients of federal funds from providing services and benefits "in a manner that limits or has the effect of limiting the participation" of the person with a disability. 45 C.F.R. § 84.52(a)(4). This regulation authoritatively construes the Rehabilitation Act and was violated by Defendant.

71.     At the risk of repetition, "[a]llergies and fear of dogs are not valid reasons for denying access or refusing service to people using service animals." U.S. Department of Justice, *ADA Requirements: Service Animals*, https://www.ada.gov/resources/service-animals-2010-requirements/.

72.     What is more, "businesses[] and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the

facility where the public is allowed to go." U.S. Dep't of Justice, ADA Requirements: Service Animals, ada.gov/resources/service-animals-2010-requirements/ (last updated Feb. 28, 2020). "Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform." *Id*. But "[s]taff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task." *Id*.; 28 C.F.R. § 35.136(f).

73.     Defendant discriminated against Ms. Lipsey solely on the basis of her disability by denying her meaningful access to the services, programs, and benefits Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure full inclusion in violation of Section 504 of the Rehabilitation Act.

74.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

75.     The Rehabilitation Act explicitly authorizes the remedies available under 42 U.S.C. § 1981a. Specifically, 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

76.     Accordingly, 29 U.S.C. § 794a(a)(2) provides that anyone bringing claims of discrimination against a recipient of federal funding may avail themselves of the remedies in 42 U.S.C. § 2000e-5(e)(3), which in turn states: "*In addition to* any relief authorized by section 1981a of this title . . . an aggrieved person may obtain [other] relief . . . ." 42 U.S.C. § 2000e-5(e)(3)(B)

(emphasis added).

77.     As such, "*any person* aggrieved by *any act or failure to act by any recipient of Federal Assistance . . . under section 794*" is entitled to the "*remedies*, procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added).

78.     Ms. Lipsey is entitled to attorney's fees, costs, and disbursements; and nominal and compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference under 29 U.S.C. § 794a.

**COUNT II: Violations of Chapter 121 of the Texas Human Resources Code**

79.     Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

80.     At all times relevant to this action, the THRC has been in full force and effect and has applied to Defendant's conduct.

81.     Chapter 121 of the THRC states that "[t]he policy of the state is to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code § 121.001.

82.     Defendant falls within the meaning of "public facilities" under Tex. Hum. Res. Code § 121.002(5), as Defendant is "a retail business, commercial establishment, or office building to which the general public is invited," and because it is a "place of public accommodation . . . to which the general public or any classification of persons from the general public is regularly, normally, or customarily invited."

83.     Timothy is an "assistance animal" (or "service animal") who assists Ms. Lipsey, a

"person with disability." Tex. Hum. Res. Code § 121.002(1) & (4). Her PTSD diagnosis, among other psychiatric disabilities, substantially limits Ms. Lipsey's day-to-day functions and her ability to care for herself.

84.    Chapter 121 of the THRC states that "[p]ersons with disabilities have the same rights as persons without disabilities to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code § 121.003(a); *see also Silguero v. CSL Plasma*, 579 S.W.3d 53, 68, 68 n.11, 69, 71 (Tex. 2019) (describing how "the purpose of the THRC aligns with the ADA's purpose").

85.    "No person with a disability may be denied the use of a[n] . . . assistance animal" like Timothy. Tex. Hum. Res. Code § 121.003(c). Defendant violated this provision by preventing Ms. Lipsey from entering OccMed with Timothy.

86.    "The discrimination prohibited by this section includes a refusal to allow a person with a disability to use or be admitted to any public facility, a ruse or subterfuge calculated to prevent or discourage a person with a disability from using or being admitted to a public facility, and a failure to . . . make reasonable accommodations in policies, practices, and procedures; or [] provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility." Tex. Hum. Res. Code § 121.003(d)(2)–(3). Defendant violated these provisions and discriminated against Ms. Lipsey by preventing her from entering OccMed with Timothy.

87.    In addition, "[a] person may not . . .harass" or "interfere with . . . or attempt to . . . harass" or "interfere with . . . an assistance animal." Tex. Hum. Res. Code § 121.003(j). Upon information and belief, Defendant violated these provisions and discriminated against Ms. Lipsey

88.    Defendant knew that its actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress

than another person would be expected to experience.

89.     By violating Section 121.003, Defendant would be "deemed to have deprived a person with a disability of his or her civil liberties," and "there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." Tex. Hum. Res. Code § 121.004(b)(1).

90.     Plaintiff is entitled to compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and intentional discrimination.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Aaliyah respectfully requests that this Court:

A.      Issue a declaratory judgment that Defendant violated Plaintiff's civil rights under Section 504 of the Rehabilitation Act and state law.

B.      Award to Plaintiff:

   i.      Nominal damages;

   ii.     Compensatory damages;

   iii.    Reasonable costs and attorney's fees;

   iv.     Interest on all amounts at the highest rates and earliest dates allowed by law; and

   v.      Any and all other relief that this Court deems just and appropriate.


Dated: August 23, 2024                          Respectfully submitted,


                                                                  _____
David John Hommel, Esq.
**EISENBERG & BAUM, LLP**
24 Union Square East, PH
New York, NY 10003
Main: (212) 353-8700
Fax: (917) 591-2875

dhommel@eandblaw.com
N.Y. State Bar No. 5298740
Admitted into the Western District of Texas
(August 15, 2023)
*Attorneys for Aaliyah Lipsey*